RICHARD R. QUINLIVAN and ANN M. QUINLIVAN, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent ROGER P. QUINLIVAN and JOYCE E. QUINLIVAN, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Quinlivan v. Commissioner
Docket Nos. 8921-75, 8922-75.
United States Tax Court
T.C. Memo 1978-70; 1978 Tax Ct. Memo LEXIS 443; 37 T.C.M. (CCH) 346; T.C.M. (RIA) 780070; February 23, 1978, Filed Clinton A. Schroeder and Frederick J. Gerhart, for the petitioners. Dale L. Newland, for the respondent. FAY
MEMORANDUM OPINION FAY, Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes: Dkt. No.
Petitioner
Year
Deficiency
8921-75
Richard R.
1967
$5,919.89
and Ann M.
1968
7,011.31
Quinlivan
1969
3,640.70
8922-75
Roger P. and
1967
3,809.91
Joyce E.
1968
4,987.97
Quinlivan
1969
3,530.34
These cases were consolidated for purposes of trial, briefing, and opinion. Richard R. Quinlivan and Roger P. Quinlivan will be hereinafter referred to individually as Richard *444 or Roger and referred to collectively as the petitioners. Petitioners are lawyers and were members of the same law firm during all relevant times herein. Until its incorporation as a professional association in 1969, the law firm operated as a partnership. Due to concessions, the remaining issue for decision is whether in computing petitioners' share of income from their law practice, a rental expense deduction under section 162(a)(3), [1] should be allowed for payments made for the use of property which petitioners had previously transferred to two short-term trusts. All of the facts in this case have been stipulated and are so found. At the time their petitions in this case were filed, petitioners and their wives resided in St. Cloud, Minn. Each petitioner and his spouse filed a joint Federal income tax return for 1967, 1968, and 1969 with the Internal Revenue Service Center in Kansas City, Mo.
In 1962 petitioners were engaged in the active practice of law. In that year, they began construction of a building designed for general purpose office space. *445 Richard and Roger each owned an undivided one-half interest in the &uilding which, upon its completion, contained some 3,275 square feet of office space. In April 1963 the law firm of which petitioners are members became the sole occupant of the building. On January 2, 1964, Richard and Roger each executed, as grantors, a 10-year 6-month irrevocable Trust Agreement creating two trusts for the benefit of their respective children. Richard and Roger each retained a reversionary interest in their respective trusts. On that same day, Richard and Roger, as grantors, together with their wives, conveyed the realty to the Northwestern National Bank of Minneapolis, trustee.[2] After the creation of the trusts, the law firm, as lessee, and the trustee, as lessor, entered into a lease of the realty held by the trusts. The initial lease was for a three-year term and was dated January 2, 1964. At the end of the three-year term, the lessee had the option of renewing the lease "at a rental and terms to be agreed upon." [3]
*446 Throughout the existence of the trusts, the law firm remained as the sole tenant of the building. During the years in issue, the rent paid by the law firm was reasonable in amount and represented the fair rental value of the office space. After the termination of the trusts on July 2, 1974, the law firm leased the office space from petitioners for an amount which was not less than the highest rent paid to the trustee during the period it held the property. The following is a summary of the rent paid by the law firm during the years in issue: Taxable
Monthly
Yearly Year Ended
Payment
Total
December 31, 1967
$ 925
$11,000
December 31, 1968
950
11,400
October 31, 1969 [4]
1,000
10,000
Upon receipt of the monthly payments, the trustee allocated one-half the rental income to each trust. [5]
*447 The issue presented is whether the rental payments made pursuant to the lease during the years in issue may be deducted as an ordinary and necessary business expense under section 162(a)(3). [6]
In , revd. , cert. denied , we set forth our view as to the appropriate test for deductibility of rental payments by the grantor in a gift and leaseback arrangement. In so doing, we held that such payments are deductible if the following requirements are met: (1) "The grantor must not retain 'substantially the same control over the property that he had before' he made the gift." (2) "The leaseback should *448 normally be in writing and must require payment of a reasonable rental." (3) "The leaseback (as distinguished from the gift) must have a bona fide business purpose." (4) In addition, the taxpayer must not possess a disqualifying "equity" in the property within the meaning of the statute. [7]
Based on a careful examination of the facts as presented, we find these requirements have been met. First, a fundamental prerequisite to the deductibility of rental payments in a gift and leaseback arrangement is the relinquishment *449 by the grantor of a quantum of control over the property which is not insignificant in comparison to the control that he enjoyed prior to making the gift. In this regard, we stated in Mathews that this requirement "is usually met through a transfer to an independent trustee who has the right and the opportunity to negotiate regarding the leaseback and who acts for the primary benefit of the beneficiaries, rather than the grantor." In the instant case, it is undisputed that the trusts were valid and irrevocable under Minnesota law. The trustee was a corporate entity in which the petitioners were not in any way connected as a shareholder, director, officer, depositor, or employee. Nor was the leaseback prearranged. Coupling these factors with the fiduciary obligations imposed under local law, we conclude that the trustee acted independently of the petitioners-grantors. Moreover, under the terms of the trusts, the trustee had broad powers and, of particular import, it had the unfettered power to "sell, lease, exchange or otherwise dispose of the property" held in the trusts, including the building. We believe the evidence sufficient to infer that the trustee carried out its *450 fiduciary duties in accordance with these broad powers granted to it under the trust agreements. Nor does respondent seriously dispute this. Furthermore, as in Mathews, the trustee periodically renegotiated the lease of the property which was renewable only under mutually agreeable terms. Specifically, for each of the years in issue, the trustee negotiated a one-year written lease of the office building in what we, based on the evidence, believe were arm's-length transactions. In addition to negotiating renewals, the trustee collected the rents due under the lease and applied the net income of the trusts for the benefit of the income beneficiaries. In light of these facts, we cannot say that the trustee's functions and independence were illusory. See ; , affd. , cert. denied . Thus, we hold that petitioners relinquished sufficient control over the realty to satisfy the first requirement in Mathews.
As to the second requirement, the lease in question was in writing, and the parties *451 have agreed that the rent thereunder was reasonable for the property. Petitioners likewise satisfy the third requirement: a business purpose for the lease. Petitioners' continued use of the realty was essential to their law practice. After the petitioners conveyed the realty to the trustee, their continued possession of the premises was wholly conditioned upon the payment of rent. Under such circumstances, the execution of the lease was a matter of business necessity. ; compare , affd. . With respect to the fourth requirement in Mathews we cannot agree with respondent's contention that petitioners possessed an equitable interest or "equity" in the realty within the meaning of section 162(a)(3). Briefly stated, petitioners' reversionary interest was not derived from the lease or the lessor and would only become possessory after the termination of the trusts. Therefore, such interest is not within the prohibition of section 162(a)(3). . Accordingly, on the *452 basis of the particular facts and circumstances involved herein, we hold the rental payments in question are deductible as ordinary and necessary business expenses. Decisions will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. Petitioners were not in any way connected with the trustee bank as a shareholder, officer, depositor, or employee during any of the years involved. ↩
3. Subsequent to the initial term, the law firm and the trustee periodically negotiated new written leases of the office space. For each of the years in issue, a one-year written lease was agreed upon.↩
4. After its incorporation in 1969, the law firm elected to be governed by the provisions of subchapter S of the Code. It also adopted a fiscal year ending October 31.↩
5. None of the rent paid by the law firm to the trustee was ever expended either for the benefit of Richard or Roger or for the support of any of the beneficiaries of the two trusts. All of such rent was invested for the sole benefit of the beneficiaries.↩
6. Sec. 162(a)(3) provides: (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including-- (3) rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.↩
7. Respondent urges, in essence, that we abandon the requirements set forth in , revd. , cert. denied , in favor of an overall business purpose test. Specifically, respondent argues that there must be a business purpose for the gift as well as the leaseback. We have previously considered and rejected this contention, and see no compelling reason to alter our position at this time. See , appeal to the Eighth Circuit dismissed per stipulation of the parties (Jan. 12, 1978).↩